18711, 18721.  HORNSBY *v.* AMERICAN AGRICULTURAL CHEMICAL CO.; and *vice versa.*

Decided April 10, 1928.

*P. D. Rich,* for plaintiff in error.  *N. L. Stapleton,* contra.

Luke, J.  In a suit on a promissory note, brought by American Agricultural Chemical Company against E. E. Hornsby, the court directed a verdict against the defendant for principal, interest, and attorney's fees, and he excepted.

In his plea and answer the defendant admitted the execution of the note; admitted receiving notice of plaintiff's intention to claim the stipulated attorney's fees; and pleaded a payment of $500 alleged to have been made December 6, 1926, a further credit for cotton, a set-off of $500 alleged to have been paid the plaintiff for certain land to which it had no title, and an additional set-off for taxes paid on said land and improvements made thereon.  The note stipulated for the payment of fifteen per cent. attorney's fees, and there is no controversy as to them.  The $500 alleged to have been paid on December 6, 1926, was allowed as a credit on the note, so that matter needs no further consideration.  The substance of the plea relating to the cotton credit follows:  In the fall of 1926 the defendant delivered to the plaintiff, "as collateral security to the note sued on," 17 bales of cotton of the average weight of 525 pounds per bale, and grading "middling and better," upon the distinct understanding that the plaintiff was to allow a credit for it of not less than ten cents a pound on the said note, that the said cotton was to be held until it enhanced in value, and that the note would be carried "for a short period of time."  The plea further alleged that "during the month of April" the plaintiff, without his knowledge and contrary to an agreement had with him, sold the said cotton for eight cents per pound, when it had a market value of fifteen cents per pound and was actually worth $1338.55; and that the defendant was entitled to set off the highest proven

value of the cotton between the time it was delivered to the plaintiff and the trial of the case.

The verdict was for the principal sum of $1112.33, $54.50 interest, and $175.02 attorney's fees. This verdict was directed upon the theory that the cotton should be credited on the note at a valuation of ten cents per pound. The defendant was entitled to a credit for the actual value of the cotton at the time the plaintiff sold it. *Waring* v. *Gaskill,* 95 *Ga.* 731 (2) (22 S. E. 659) ; *Harrell* v. *Citizens Banking Co.,* 111 *Ga.* 846 (36 S. E. 460) ; *Campbell* v. *Redwine,* 22 *Ga. App.* 455 (3) (96 S. E. 347) ; *Bennett* v. *Tucker,* 32 *Ga. App.* 288 (123 S. E. 165).

It was agreed between the parties that seventeen bales of cotton were to be credited on the note at an average weight of 525 pounds per bale, and that the price was to be fixed by the evidence in the case. Mr. Hornsby testified for himself substantially as follows: "I was looking for something above ten cents per pound, because it was left with the understanding they were to give me credit for ten cents a pound, and if there was any increase, I was to get that. . . I do not know what has been the highest price of cotton of the same grade as the seventeen bales since I delivered the cotton to them. . . I did not have anybody grade the cotton. As each bale was ginned I examined the sample at the time. . . Some of it would go middling, and some low middling, and that was about the grade. On a general average I would say it would grade low middling. Cotton was selling as high as twelve and thirteen cents at that time. I was expecting to get something like twelve and a half cents for the cotton." C. M. Harris testified: "About May 1st good middling was selling for about twelve cents per pound. . . I don't know the grade of this cotton. . . I think two bales would pass low middling. The other was stained and a very low grade. Part of it would not have brought five cents on the market at that time." Mr. H. L. Gans, who bought the cotton, testified as follows: "I paid him eight cents per pound for the cotton. . . The price I paid . . was a fair market price at the time I bought. . . At the time the cotton was bought, good middling cotton was worth about twelve cents per pound. . . The average grade of this cotton was strict good ordinary cotton."

Of course, the burden was upon the defendant to show the market price of the cotton at the time it was sold. According to his testi-

mony, cotton was selling as high as twelve and thirteen cents, but what "low middling" cotton was selling for he does not state. What he was expecting to get for the cotton throws no light upon its actual value. On the other hand Gans testified positively both as to the grade of the cotton and as to its market value.

Under the evidence, a jury might have given the defendant a credit for the cotton at eight cents per pound, in accordance with the only definite testimony as to its actual value, or they might have taken the defendant's testimony as true, and allowed a credit on the note for the cotton at a valuation of ten cents per pound. The court accepted the defendant's evidence (which was directly contradicted by that of the plaintiff) that he was to have a minimum credit on the note of ten cents per pound for the cotton, and directed a verdict accordingly. The defendant, therefore, got for the cotton the very highest credit the evidence entitled him to. What more could he ask? Of course, the defendant can not complain that the court adopted his contention that the cotton was converted. From a calculation it appears that the verdict is sufficiently large to account for the credit of the full amount of the cotton at ten cents per pound, together with interest on this credit from the date of the conversion. In so far as the cotton is concerned, there appears to be no possible objection to the direction of the verdict for the plaintiff.

The "sales agreement" entered into September 24, 1925, between American Agricultural Chemical Company, of New York, and E. E. Hornsby, of Miller county, Georgia, for the sale to Hornsby of certain land in Seminole county, recited the cash payment of $500, and the giving of a note for $500 for the balance of the purchase price of the land, and contained the following stipulation: "It is also understood that in event of failure of title of party of first part, party of the second part will deliver back to said first party the land above described, and said first party will refund the consideration paid therefor, and party of second part will not hold said first party for damages for breach of contract for that reason."

In regard to the foregoing transaction the defendant pleaded that he contracted for the land as indicated, and that it was agreed that if the plaintiff's title should fail, the plaintiff would immediately refund the cash payment of $500 and surrender the note given for the balance of the purchase price of the land; that it developed that

the plaintiff did not own the land, had never been in possession of it, could not, and did not, make the defendant a good and sufficient title to it, and was unable to deliver possession of the land to him, and that, therefore, the defendant was entitled to a set-off on the note of the said $500 paid on the purchase price of the land. By amendment the defendant pleaded that the plaintiff was a nonresident of the State of Georgia, and "that a suit in ejectment was brought against this defendant by the John Hancock Insurance Company in the superior court of Seminole county, claiming title to said land, and that the same has been tried, and resulted in a verdict and judgment in favor of the plaintiff and ousting this defendant from said land."

It was agreed between the parties that an ejectment suit was brought against E. E. Hornsby in Seminole county for the land in question, that the American Agricultural Chemical Company was brought into court and made a defense to the suit, and that the trial of the suit resulted in a verdict and judgment against both defendants and in favor of the John Hancock Insurance Company, plaintiff, for both the land and its rent. It was further agreed that the American Agricultural Chemical Company filed a motion for a new trial, which was still pending. Hornsby testified that he bought the land from American Agricultural Chemical Company, paying $500 cash, and giving his note payable December 15, 1925, for the balance; that no demand had been made on him for the balance of the purchase-price represented by the note; that he had expended about $90 for taxes on the land and $140 for improvements made thereon, and that he was still in possession of the land.

It appears from the terms of the sale contract that the defendant's right to get back the money paid by him on the land depended, first, upon the failure of his grantor's title, and, secondly, upon his surrender of the land to the grantor. Hornsby was still in possession of the land, apparently awaiting the termination of the ejectment suit to fix the title thereto; and, so far as appears from the record, the title to the land is not known, and will not be, until the ejectment suit is concluded. In this situation the set-off of $500 paid on the land was properly disallowed; and the same is true as to taxes paid on the land and as to the cost of repairs and improvements made thereon.

The motion for a new trial as amended is based upon the usual

general grounds, and upon special grounds complaining of the court's judgment directing a verdict for the plaintiff. The defendant in error filed a cross-bill of exceptions. For no reason assigned did the court err in overruling the motion for a new trial. The cross-bill of exceptions is dismissed.

*Judgment on the main bill of exceptions affirmed; cross-bill dismissed. Broyles, C. J., and Bloodworth, J., concur.*